versus the United States. Mr. Presley is here. And Mr. Dale for the government. And again, when you're ready, Mr. Presley. Good morning, your honors. If it may please the court. My name is Robert Presley, and I am representing the taxpayer appellants in this case, where they filed a motion or a petition to quash multiple summonses issued to a third party banking institution on behalf of their clients, who are the unidentified taxpayers in this case. And the reason they set forth this petition was because the Florida Bar has required them to protect the rights of their clients whenever they become an issue. Let me ask this before you get to the merits. Now, is my understanding correct that all of the documents that are subject to the summons, the IRS administrative summons, have already been turned over to the IRS? Yes, your honor. That is my understanding. If that's the case, why isn't this appeal moot? Your honor, my understanding is also that they have declined to review the records until this matter is disposed of at this time. They've alerted us that they have the records, but that they have not formally reviewed them at this point. Okay. And your honor, this is why we're here. We're here to protect, not my clients' rights, but their clients' rights. How do you have standing to protect their rights? Well, that's because the Florida Bar has issued a ruling that said if your clients have rights, you have to take the steps to protect them. And that's what they're doing in this instance. Because we believe, and we have the case law to back this up to support this, that there are privacy rights at issue emanating not from the Fourth Amendment of the Constitution, but from Article I, Section 23 of the Florida Constitution. Which, under the Rackus case, which is a case the Eleventh Circuit has cited to routinely, they say that if you want to invoke the Fourth Amendment protection of unreasonable search and seizure, you need to have two elements present. The first is a subjective expectation of privacy in that area. So the Florida Bar gives Presley standing to assert Fourth Amendment rights of their clients? Yes, your honor, in the sense that we have to protect all clients' rights who become at issue in an event such as this. Is there some way that the clients would know about this subpoena in the absence? I mean, could your, I guess there's no way that the clients would know about the subpoena in the absence of your client having sent out notification to all of its clients. Is that? No, your honor, because the way we look at this case is that it is the obligation of the IRS to submit this summons to the, to give notice to these parties. And if they cannot give notice. But why? Because there's no indication, correct me if I'm wrong, but I don't recall seeing any indication that the IRS was looking to investigate your clients. It looked to me like the IRS was looking to look at, and the subject and targets here were your clients, not your clients' clients, right? Yes, your honor, but we alerted the IRS upon receipt of that summons to let them know that the information they're seeking also includes multiple trust funds and escrow accounts that relate solely to the law practice. And the clients, the clients' clients, the unknown taxpayers, their financial resources. Right, but there, but, I mean, in the Tiffany case, right, what happens there is the Supreme Court says, and in that case, the letters are sent for a name target and then John Doe, I guess, kind of targets. They don't know the names of the subsidiaries, but they're all targets. And the court there said, it's enough that the name target is in because the name target's going to protect the interests of the subsidiaries. And it doesn't really matter whether they get notice or not. So here, you don't even have a situation where the IRS is seeking information from your clients' clients. They're only seeking information to investigate your clients. So it seems to me that if it wasn't even enough in the Tiffany case where the unnamed people were being investigated, how could it be enough here where your clients' clients are not even being investigated? Well, Your Honor, in Tiffany, in the Tiffany case, what the Supreme Court ultimately, I don't want to say holds, but what they finally looked at is that a problem arises when you're not investigating the person you're summonsing. Because how they treat the matter is that the person who is summonsed would have the ability to act in their self-interest to protect the unknown entities. And according to Tiffany, because, as Your Honor has stated, that both parties are being investigated, it was fine to do it under the normal practices. But because you had an instance, because of a, I'm going to say a hypothetical, but because they found a problem of what would happen when the summoned party is not being investigated, they reasoned that, well, they wouldn't have any reason to protect these non-parties. So the best way to do it would be to invoke a hearing under 26 U.S.C. 7609F, which would be to have a formal hearing process to determine whether the information sought would be relevant to either the investigated party's case or to any party's case at this point. So that they don't have the three problems that would arise. The first problem being, well, you may end up only getting information that relates solely to these non-parties, solely to these unknown taxpayers. Another problem would be you would be trampling, you could be potentially trampling on state privacy rights. And the third would be, well, again, you wouldn't be protecting any self-interest that would protect these unknown taxpayers normally, stemming from the party that was summonsed, would not be there because they're not being investigated at that point. So when you have those three problems, the Supreme Court laid out a framework. But your client is being apparently investigated through the use of the third party subpoena, right? Yes, Your Honor. Your client is not challenging that subpoena or those subpoenas on their own behalf? No, Your Honor. And that's part of the problem identified in Tiffany. They're not challenging, my clients are not challenging the summons on, you know, they have complied with the summons. They have said that the IRS has access to their personal records. But the records of their clients, that's what we're trying to protect. And the reason... But they can't be... I mean, it doesn't really matter whether you have standing to assert a Fourth Amendment right on behalf of your client's bank records or not. It's pretty clear, isn't it? The Supreme Court says that you don't have a legitimate expectation of privacy in the contents of records that are voluntarily conveyed to a third party.  And then in Miller, the Supreme Court says this includes records held by a bank, period. End of case. Well, Your Honor, I believe, though, that... I mean, my firm had the luxury of litigating a similar issue to that in the second DCA. It was the case of Inglis v. Castleberry, where a former wife of a beneficiary was trying to get access to financial records held by a trustee. And the second DCA said, absent of relevant or compelling need, we have to uphold this right of privacy for all the other beneficiaries. So there is a... But that's a different issue. I mean, here we're talking about an IRS subpoena that is authorized by Congress under certain circumstances. We're not talking about a personal action. You know, there's no statute that entitles the person to obtain these documents. And, you know, we are bound by the Supremacy Clause. So why would it be the case that even assuming that your client has standing to represent its client's interests, that we could somehow ignore Miller? Well, Your Honor, there is a concept called reverse preemption. When there are areas of regulation that are traditionally governed by the states, you have to... There's a presumption against preemption. In this case... Except that it's not necessarily traditionally governed by the state here. I mean, it's, you know, the Fourth Amendment. This is an interpretation of the Fourth Amendment and whether this is a reasonable seizure. Yes, Your Honor, but in order to invoke the Fourth Amendment, you need to have a privacy right at issue. And those privacy rights are traditionally regulated by the states. And that is exactly why, in Tiffany, if the notion of privacy was clear-cut, the Tiffany Court could say, well, it would not be trampled on, or it would be trampled on. Instead, it said, may be trampled on. Privacy rights may be trampled on by the IRS. That gives an implication that it's recognizing that states set the policy on privacy. In this instance, we have the Article I, Section 23 of the Florida Constitution guaranteeing its citizens a right to privacy. Courts have interpreted that to saying financial records, all, no matter who it's held by. If it's a... Unless it's a relevant or compelling need, you can't... It's impossible to access these records. And if you... So in order... That would satisfy the subjective expectation that my client's clients would have. As far as it would be illegitimate, I can think of no other source, source better than the Florida Constitution to legitimize this expectation of privacy, as well as the court's interpretations of such. How do you address the supremacy clause issue in this case? Your Honor, I address it by the notion of traditional, of reverse preemption. Because this is an... Because this is an area that is traditionally... Area being the privacy area is traditionally regulated by the states. And because in order to invoke the Fourth Amendment, you need a privacy right outside of the Fourth Amendment, these are areas that the states have to set forth. And I believe, as I previously stated, that the Tiffany Fine Arts case, when it recognizes that privacy rights could be trampled on, the Supreme Court's admitting that, well, in New York, they don't have a right to privacy. But in Florida, you do. You have a right to privacy exactly over this issue. Otherwise, the Supreme Court could have just said, no, there is no privacy right at issue, so that's not a concern. That's not a reason we have to hold a hearing in this instance. In conclusion, Your Honor, we believe that this process has nullified the state constitutional right to privacy held by our clients' clients by exposing their financial transactions to scrutiny. And we believe that that instance invokes the Fourth Amendment's Equal Protection Clause... Sorry, the Unreasonable Search and Seizure Clause, and that we have shown a right to relief beyond the speculative level. If there are no further questions, I'll reserve the rest of the time for rebuttal. Thank you, counsel. We'll hear from the government. Mr. Dale. May it please the Court, my name is Ivan Dale on behalf of the United States. Your Honor is correct that Miller holds that a bank depositor lacks Fourth Amendment interests in banks' records of his accounts. There's no basis for attacking or effectively ignoring that decision based on a Florida expectation of privacy. As the dissent in Miller makes clear, the Supreme Court was aware in Miller of state Supreme Courts recognizing privacy interests in bank accounts, but held anyway that it didn't give rise to a Fourth Amendment challenge. Standing for Fourth Amendment purposes. The Florida Constitution itself also says that the right to be secure in a person's papers shall be construed in conformity with the Fourth Amendment as interpreted by the United States Supreme Court. So Miller's good law in Florida, as much as it is anyplace else, this case is a little bit even one step removed from Miller because we're not even talking about a person's bank accounts. We're talking about a client giving money to their lawyer and then wanting to, or somehow being entitled to notice that the lawyer is under investigation and somehow entitled to notice that the lawyer's bank is being, you know, records being sought. So we're not even in the, we're one step removed from that. So I don't even think that even Florida law would recognize a privacy right in this context. Even under Florida law, the standard is relevance. So, you know, the cases that he cites for Florida law say that a state agency can get records, can get bank records without notice to the depositor if it's relevant to a legitimate investigation. And that's what is undisputed here. It's undisputed that these records are relevant to the United States investigation into the correctness of the Pressley's and their law firm's return. All you have to do is to ensure that the Powell factors are satisfied. Is that the government's argument? That's correct. And there's been no dispute that the Powell factors have not been satisfied. I may have said a double negative there. But the Powell factors are not in dispute. The relevance of these documents to the IRS investigation are not in dispute. There's no claim that there's some kind of attorney-client privilege involved. So there's no basis to quash the summons anyway. So even if, let's assume that these clients had some sort of right to contest these summonses, all they would, you know, there's nothing here, there's no basis here to quash the summonses if, you know, if Mr. Pressley, my counsel here, has standing to bring this claim on behalf of this client, then he clearly has standing to challenge the summons, challenge the Powell factors on behalf of other clients. And, you know, there's just no, and he hasn't done that. I mean, there's no basis to quash the summons even assuming the right that we're talking about here. Mr. Dale, let me ask you a question before we proceed. Yes, Your Honor. Opposing counsel has indicated that there's some understanding between the parties that these documents that have been recovered pursuant to the subpoenas have not been looked at, and therefore that would avoid the potential question of mootness. What is your answer on that? My understanding is I'm not aware of any such agreement with the revenue agent. So, in fact, I'm aware that the revenue agent has at least reviewed some of the records that were turned over prior to the, at the time that the appellants filed a motion to stay in this court, the revenue officer had at that time reviewed some of the records that had been turned over by the bank. And, in fact, the revenue agent is beginning an investigation into a subsequent year and has issued summons in connection with that to the same bank. They're also on appeal to this court. But does it matter under Church of Scientology where the Supreme Court said that a court does have the power to effectuate a partial remedy by ordering the government to destroy or return any and all copies it may have in its possession and the availability of this possible remedy is sufficient to prevent a case from becoming moot? That's absolutely correct, Your Honor. Church of Scientology is the answer to the mootness question here, regardless of whether there's some kind of informal agreement to review or not review the records. I mean, the records are confidential. The IRS investigation 6103 prevents the IRS from disclosing any information that it receives in the course of this investigation, absent some statutory basis for doing so. So the records are protected. The court can fashion a remedy by ordering the return of the records and that they not be used in a particular proceeding. So the mootness is not a problem here. I do want to address a couple of issues. The Florida Bar itself doesn't require an attorney to contest a summons in this circumstance. In fact, the Florida Bar itself, in its opinion number 92-5, says that once the IRS issues a summons, there's no ethical violation if you comply with a summons, so long as you check first to make sure that what you're providing isn't privileged. But if there's no claim of privilege, then there's no ethical violation in disclosing the documents. So there's no real ethical basis for this appeal or for the petition to quash originally. In terms of whether the IRS is obligated to send notice to unidentified third parties, Tiffany Fine Arts answers that question. Bisaglia answers that question. The answer is no. The statute itself. Although in Tiffany Fine Arts, the reason there's no need to send notice to the unidentified parties is because there is another party, the identified party, who is protecting its own interest. And in doing so, the Supreme Court said it is effectively also protecting the interests of the John Doe parties. And we don't have that here because the client is not protecting its own interest. So there's nobody contesting the subpoenas. Well, Tiffany Fine Arts didn't require somebody to actually contest the subpoenas. What Tiffany Fine Arts says is there's a- I got you, that if they wanted to, that they had the ability to contest it and, therefore, their interests were covered. Right, and appellants had the ability to contest these summonses here. And they can't really point to any reason why the summonses are invalid. It's-in 7602, the statute says that notice is required to the persons identified in the summonses under investigation. That's the party entitled to notice. That's the party entitled to challenge. That's the party in Tiffany Fine Arts that can sort of alleviate Congress's concern with, you know, judicial review of enforcement proceedings. And a John Doe summons in this case, that's the 7609F statute sort of raised for the first time in the reply brief. But I know that it's raised in this related litigation. 7609 itself says that you issue a John Doe summons when there is no such person who can contest the summons. So it wouldn't apply here. It says specifically that those procedures are used when there's a summons which does not identify the person with respect to whose liability the summons is issued. That's not the case here. And ultimately, their argument is tantamount to saying that a John Doe summons is required or notice to unidentified parties is required in every bank records case. Because all bank records have receipt of funds. You know, if I place a check into the stream of commerce, somebody's holding it for me or even if not, you know, somebody's going to find out that I wrote that check if the recipient of that check is under investigation. You know, we're not, there's really no limit to that. And their argument would basically upturn the entire summons enforcement proceedings in bank records cases. So, I mean, in sum, it's well settled that depositors are not, don't have a fourth amendment right to prevent the bank from revealing their records. There is a statutory basis by which a party under investigation is entitled to notice that that happened. But if they, you know, challenge that, they have to establish that it's not relevant to a legitimate investigation or it's in bad faith or there's some issue of privilege. And none of those are an issue here. So absent, you know, we're here, the summons is relevant to a legitimate investigation. There's no claim of privilege. And it's not even the taxpayers' or their clients' records that are being sought. There's no basis to quash the summons. The decision of the district court was correct and should be affirmed. All right. Thank you, Counsel. We'll hear again from Mr. Presley. Thank you, Your Honor. Just going back to the standing issue that you've brought up, one of the other reasons my clients would have standing to bring these rights to the forefront is because it's also, you know, the trust accounts are their accounts. And without the unknown taxpayers' given notice of this, someone has to enforce their rights. And I believe it's cited in my brief, and I believe it's citation 78-16, the advisory opinion that we rely upon. It says that you have to protect rights and privileges. The rights we believe in this case, as I've stated before, are privacy rights that would necessarily invoke the Fourth Amendment. The other aspect I want to bring up is that one of our clients did catch wind of these proceedings and did make a formal objection to it, but it was already at that point too late to contest it, according to the summons. To be clear, I'm not sure if the district court even considered that, The one thing I would like to end, though, Your Honor, and I think there is at least in the air a question of whether privacy rights do exist, and I would just want to point out again, if the notion of privacy rights was completely clear cut, if it was completely preempted, then the Supreme Court would have just come out and said it, and wouldn't have posed it as a potential question, whether the IRS could act in these instances without trampling on the privacy rights. Instead, it left it open-ended, and I believe it did that because it recognized that other states may impose what New York doesn't, and that's what's happening here. The rights of my client's clients, the unknown taxpayers, are being trampled upon by not allowing them time to interject in this case, and, you know, from a practical standpoint, we're talking about two, three years ago. Clients, unless they're active clients, we do not have, you know, my clients would not have contact with them, and the representation ends once the matter is done. So for us to go out and track these clients down and notice them, to do what the IRS should be doing, would just, would be. If their representation has ended, then what is even the purported basis for your representing them here? Your Honor, the rights still continue. The rights to protect our clients' privacy rights, that continues ad nauseum. That's why the Florida Bar requires you to retain records and to retain their information. You don't go, it's, you know, when clients come to visit, when clients come to hire lawyers, they do so with the idea that everything they give them will be kept confidential through the end of time, through the end, and privileged. And in this case, we have to always upstand, sorry, uphold that right to privilege, right to privacy. If there are no further questions, I will rely on the initial brief and my reply brief for further arguments. All right. Thank you, Mr. Presley.